IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP 29 2014

DAVID J MALAND, CLERK
BY
DEPUTY ____________

| | | |
|---|---|---|
| HILL, et al.,<br>Plaintiffs, | § | |
| | § | |
| V. | § | Civil Action No. 1:14cv494 |
| | § | |
| STATE OF TEXAS,<br>Defendant. | § | |

## I. JURISDICTION AND VENUE

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. Section 1367. Plaintiffs' Federal Tort Claims Act claims are authorized by 28 U.S.C. Section 1346.

The Eastern District of Texas is an appropriate venue under 28 U.S.C. Section 1391(b)(2).

In lieu of past experience with the U.S. District Court in Lubbock regarding a number of complaints filed by the lead Plaintiff, Plaintiff's respectfully petition this Court for investigation and redress of grievances. Due to time constraints regarding an October 7th, 2014 Supreme Court case concerning Arkansas inmate, Gregory H. Holt, Plaintiffs ask for the Court's leniency and understanding regarding any technical mistakes in this filing. That all available information presented and known by the Court and Plaintiffs' circumstances would be most favorably construed.

# II. PLAINTIFFS

The current custodian of this case is Rocky Hill. The affected population is the inmates of the Texas Department of Criminal Justice. Plaintiffs participating in this Filing are as follows:

Rocky Hill-1596897
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: Rocky Hill 9/24/14

Bradley Duke-1933242
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: [signature] 9/24/14

Daryoush Papari-1849802
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: [signature] 9/24/14

Gustavo Cruz-1919436
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: Gustavo Cruz 9-24-14

Timothy Vaughn-1938157
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: Timothy Vaughn

Gary Wells-1724676
Smith Unit
1313 CR 19
Lamesa, TX 79331 Signature/Date: GARY WELLS 9-24-14

## III. FACTS

Inmates at the Smith Unit and in the Texas Department of Criminal Justice as a whole, possibly not excluding the State Jail and Youth Commission systems, are required to be clean shaven. Because of the way razor distribution is managed and conditions surrounding the proper storage of our razors in a prison environment, we are put at an unreasonable risk of contracting HIV-AIDS, hepatitis C, and other blood born pathogens.

Affecting the entire system is an inability to lock up our razors if you are indigent, as no money is available for these indigent inmates to purchase a lock from commissary. Many have no one to put money on their inmate accounts and TDCJ does not pay workers. Money would not be available to purchase razors, mirrors, shaving creams, or medicating aftershave products.

Contributing to this risk, is the fact that there is a significant number (69 percent according to a recent Texas Public Radio broadcast with TDCJ's Executive Director, Brad Livingston) of inmates with drug dependency and mental health issues. Historically, prisons have an elevated number of inmates with HIV-AIDS, hepatitis C, hepatitis B, tuberculosis, and other serious communicable diseases. For some time now there has been no segregation of inmates with HIV-AIDS, hepatitis C, and other communicable diseases from being housed with someone who is free of those diseases.

The majority of housing areas are cells, designed to hold two inmates. At this unit, two-man cells comprise four out of five buildings, on this general population side of Smith. In the High Security Building here, there is a significant percentage of two-man cells. "Five Building" is a single building with multiple wings. All with cubicle style, individual bunks, where people are free to walk around each other's bunking area. Aside from Administrative Segregation and Protective Custody, there are virtually no cells occupying a single inmate. Inmates are regularly moved, and who you are housed with is at the discretion of TDCJ. Logically, inmates come and go from their housing throughout the day, so you are not always there when your cell-mate is.

Systemwide, we are provided with one razor per week. At this Unit it is not in any packaging, and is either slid under our door or placed inside our cell, near the door, with a roll of toilet paper and ten bars of soap, sometime during the middle of the night. It is a blue double-blade razor. These dull quickly and are of inconsistent quality. It is the working inmates who pass the razors, toilet paper, and soap out. It is not uncommon for some to receive used razors, as working inmates keep the unused razors, which can be used by themselves, friends, or sold (traded) for goods or services. Sharp, clean razors are not commonly available when needed to shave, as the shaving policy is very strict; many having to shave daily, because of facial hair genetics. Also, contributing to cutting and abrasions — areas of tissue damage susceptible to transmission (bleeding) or infection of a pathogen — is the fact that many inmates are unable to purchase a mirror, shaving cream, additional razors, or medicating aftershave products. (This could be due to commissary restriction or

or being indigent.) There are no mirrors in the cells or dayrooms at this unit, or at the others in Texas, as far as we can discover these facts. Because of the design of the hot water system, many times there is not hot water available. As any male who regularly shaves knows, hot water, a sharp razor, shaving cream, a mirror, and after-shave are all variables contributing to a cut-free shave.

Many guys shave in the showers – shared by everyone. In addition to shaving their face and neck, many guys shave their heads, and other parts of their body. The design of each shower's drainage basin in these two-man cell wings frequently becomes clogged, accumulating water and spilling over onto the floor. Whether in the shower or in the cell, cuts are made when shaving. Cuts bleed and that blood has to go somewhere. Many may not be aware of these areas possibly being a risk or understand the nature of transmissibility.

Clipper shave passes are issued by medical. There used to be no charge to see medical, now there is a $100 fee. Relevant, is the fact the majority of inmates possessing clipper shave passes are black; attributable to an increased likelihood of cuts and abrasions when shaving. Overall, inmates are much less apt to go to medical for any problem now, because they don't want to be charged $100. This situation further increases the probability associated with the spread of disease.

About two years ago the name brand razors (Schick), sold in packages of ten, were taken off of commissary and replaced with blue, double-blade razors that are very similar in shape and color as the razors TDCJ provides. These are sold as singles, not tamper proof, and each in a resealable plastic package. These Chinese-made razors (Amercare) are not any good – practically unusable – coming this way from the factory. Sometime around when razors were swapped on commissary, mirrors ($8.00 each) were no longer sold. For quite sometime no mirrors were available on commissary. Finally, in early 2013, a less expensive mirror became available for $3.80.

There are a number of possible scenerios, that most certainly can occur in prison, in regards to contracting a disease because of shaving: A celly who has mental problems and doesn't care if he shaves with your razor when you're gone because his is dull. He has HIV and doesn't clean it. You come in from work and have to quickly shave so you can go eat. You're in a hurry, so you quickly dry shave and cut yourself. You just use toilet paper to soak up the blood and take off to chow. / A celly who gets up in the middle of the night when they pass out razors and gives you his used one and keeps your clean one, while you're sleeping. / You get a used one from the mentally disturbed inmate passing them out. / Your lock is popped open by your celly hitting it with a shoe, as is possible with these expensive, low quality locks. / You trade a soup for a used TDCJ razor put in the resealable plastic of the commissary razors. They look the same and you thought it was a new one. / You have open cracks and sores on your feet and have to use the clogged up shower. Some guy with some disease just shaved and cut himself severely. You never even knew. / Not having a mirror (very common), no shaving cream (same), and a razor that has been used about six times; and getting all cut up and somehow contracting or spreading something, you may never even know you had.

Another point of concern, possibly increasing the overall rates of infected persons, is the elevated number of homosexuals in prisons. This increase can be the result of two factors: increased promiscuity and an apathetic attitude towards using another

male friend's razor to shave. This situation is clearly plausible.

The issue of being clean shaven is primarily enforced before we go into the dining hall to eat. If you are not clean shaven, you either do not eat or have to go back and shave first. Once in the dayroom, it is usually not possible to get back in your cell to shave, when you discover you should have been shaven before coming out. So that you can eat, you borrow a razor from someone in the dayroom or someone that stayed in their cell and can provide that. Some care if it is unused, some do not. Some say they will replace it with a clean one later. Despite it being the responsibility of the individual to be shaven before coming out, this situation frequently happens for many. It has been this way for years and this situation occurs systemwide.

It should be noted that male inmates are allowed to keep a head of hair of reasonable length. Enough so that two types of hair grease (Pomade and Blue Magic) and a styling gel are sold on commissary. These products are used by men, and men do slick back and style their hair in Texas' prisons. In an objective comparison, it seems easier to conceal a similar object in slicked back or styled hair than it does in a short beard.

In the *Disciplinary Rules and Procedures for Offenders* handbook it says, "The offender's compliance with the grooming standards shall be taken into consideration by the warden or assistant warden when deciding to remove or modify the disciplinary sanctions." I was recently given a disciplinary case for not being shaven, despite alerting them I was given a dirty razor. I grieved this, and Warden Jones replied the case would not be dropped. I submitted a Step 2, which goes to a higher authority. Warden Jones was transferred to a different unit (not sure if related), and the penalty stuck. I went and got a clipper shave pass at this point. These grievances were sent to the Department of Justice's Civil Rights Division, along with much information regarding TDCJ and what I have gone through.

Without the means of obtaining the information, women's prisons in Texas may be adversely affected by the inability to lock up their razors and obtain additional razors, shaving cream, and a mirror if necessary. The means to communicate and work with active members of this group of prisoners and the various disciplines and units within the Texas Department of Corrections is not in our power. Awareness and willingness to move forward with legal action on a comprehensive scale may have been lacking for a number of reasons. By no means should this Complaint be limited to any one party, when a number of parties are at risk.

There are a number of civil cases regarding religion and the issue of shaving. A case involving an Arkansas prisoner who is Muslim, Mr. Holt, is to be heard in early October. I, Rocky Hill, have recently notified the Supreme Court of this issue of of being left susceptible to contracting a deadly disease, by sending a letter to the Court in support of Mr. Holt's position. I have included a copy of this letter and the witness petitions verifying related facts. This also contains essential information regarding our state of health and my personal plight for addressing issues.

# IV LEGAL CLAIMS

This situation places inmates at an unreasonable risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Having been addressed through the grievance process, officials have been deliberately indifferent to an obvious and serious danger. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Both support an Eighth Amendment violation of cruel and unusual punishment.

With further research more precedent could surely be discovered in regards to this situation. Likewise, there is surely state law covering this. Due to the need to get this case into court, because it may potentially have bearing on Mr. Holt's Supreme Court case October 7th, we have not been able to research specific violations to the extent which we would like.

# V. RELIEF

This is a very serious issue that is going to require some prompt changes. The most secure way to eliminate the risk of contracting a disease is to allow beards. In regards to security, have inmates run their Fingers through them in front of the guards like they do our hair. Also, provide inmates with a new, sharp razor in a sealed, tamper proof, plastic package when they need to shave. And for the commissary razors to be replaced with sharp, quality razors. Provide mirrors to anyone who needs one, along with shaving cream.

We ask for the issue of relief to be discussed with counsel when appointed.

US. District Court Clerk
300 Willow St. Suite 104
Beaumont, TX 77701

Rocky Hill-1596897, Smith Unit
1313 CR 19
Lamesa, TX 79331

CLERK, U.S. DISTRICT COURT
RECEIVED
SEP 29 2014
EASTERN DIST. OF TEXAS
BEAUMONT, TEXAS

September 24, 2014

US. District Court Clerk:

I am sending this Complaint so that it can be reviewed. The reason this is being sent to this Court instead of Lubbock is because I have had some serious problems in dealing with the U.S. District Court in Lubbock. I have been told by others that this was a good Court to file with.

I am sending this Court information concerning my situation, and am in the process of getting copies to do so. These should be arriving a couple of days after you receive this. I am sorry for any inconvenience.

Sincerely,

Rocky Hill